LEVI & KORSINSKY, LLP
Adam Apton (SBN 316506)
1160 Battery Street East, Suite 100 - #3425
San Francisco, CA 94111
Telephone: 415-373-1671
Facsimile: 415-484-1294
Email: aapton@zlk.com
      *Co-Lead Counsel for Plaintiffs*

[*Additional Counsel on Signature Pages*]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| IN RE LYFT, INC. DERIVATIVE LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Lead Case No. 4:20-cv-09257-HSG<br><br>**NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: August 29, 2024<br>Hearing Time: 2:00 p.m.<br>Courtroom: 2 – 4th Floor<br>Judge: Hon. Haywood S. Gilliam, Jr. |

NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES

LEAD CASE NO. 4:20-cv-09257-HSG

# **TABLE OF CONTENTS**

STATEMENT OF ISSUES TO BE DECIDED ................................................................. 2

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 2

I.      INTRODUCTION ................................................................................. 2

II.     FACTUAL AND PROCEDURAL BACKGROUND........................................ 4

      A.      Factual Background ................................................................. 4

      B.      Procedural Background........................................................... 6

            1.      The Derivative Litigation................................................. 6

            2.      Related Securities Litigation............................................ 7

            3.      Settlement Negotiations .................................................. 8

III.    TERMS OF THE PROPOSED SETTLEMENT ................................................ 9

IV.     LEGAL STANDARDS FOR PRELIMINARY APPROVAL OF
       SETTLEMENT....................................................................................... 10

V.      THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY
       APPROVAL ......................................................................................... 12

      A.      The Settlement Confers Substantial Benefits on Lyft............... 12

      B.      The Settlement Is the Product of Arm's-Length
            Negotiations ....................................................................... 14

VI.     NOTICE TO STOCKHOLDERS ............................................................... 17

VII.    PROPOSED SCHEDULE OF EVENTS ....................................................... 19

VIII.   CONCLUSION ..................................................................................... 20

i

NOTICE OF MOTION, UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT,
AND MEMORANDUM OF POINTS AND AUTHORITIES

LEAD CASE NO. 4:20-cv-09257-HSG

# TABLE OF AUTHORITIES

## CASES

*Arace v. Thompson*,
2011 U.S. Dist. LEXIS 93105 (S.D.N.Y. Aug. 17, 2011) .................................................... 18

*Arnaud van der Gracht de Rommerswael v. Auerbach*,
2019 WL 7753447 (C.D. Cal. Jan. 7, 2019) ...................................................................... 14

*Class Plaintiffs v. Seattle*,
955 F.2d 1268 (9th Cir. 1992) ......................................................................................... 10

*Cohn v. Nelson*,
375 F. Supp. 2d 844 (E.D. Mo. 2005) ............................................................................... 14

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .................................................................................. 11, 12

*In re Am. Apparel, Inc. S'holder Litig.*,
2014 WL 10212865 (C.D. Cal. Jul. 28, 2014) .................................................................. 15

*In re Am. Capital S'holder Derivative Litig.*,
2013 U.S. Dist. LEXIS 90973 (D. Md. June 26, 2013) ...................................................... 19

*In re AOL Time Warner S'holder Derivative Litig.*,
2006 WL 2572114 (S.D.N.Y. Sept. 6, 2006) .................................................................... 16

*In re Apollo Grp., Inc. Sec. Litig.*,
2008 WL 3072731 (D. Ariz. Aug. 4, 2008), *rev'd & remanded*, 2010 WL
5927988 (9th Cir. June 23, 2010) .................................................................................. 16

*In re Apple Computer, Inc. Derivative Litig.*,
2008 WL 4820784 (N.D. Cal. Nov. 5, 2008) .............................................................. 12, 13

*In re First Cap. Holdings Corp. Fin. Prods. Sec. Litig.*,
1992 WL 226321 (C.D. Cal. June 10, 1992) .................................................................... 17

*In re Hewlett-Packard Co. S'holder Derivative Litig.*,
716 F. App'x 603 (9th Cir. 2017) .................................................................................... 12

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
176 F.R.D. 99 (S.D.N.Y. 1997) ........................................................................................ 12

*In re NVIDIA Corp. Derivative Litig.*,
2009 U.S. Dist. LEXIS 24973 (N.D. Cal. Mar. 18, 2009) .................................................. 13

ii

NOTICE OF MOTION, UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT,
AND MEMORANDUM OF POINTS AND AUTHORITIES

LEAD CASE NO. 4:20-cv-09257-HSG

*In re NVIDIA Corp. Derivative Litig.*,
  2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) .................................................................... 11

*In re OSI Sys.*,
  2017 U.S. Dist. LEXIS 221033 (C.D. Cal. May 2, 2017) .................................................... 12

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ................................................................................................. 17

*In re Pfizer Inc. S'holder Derivative Litig.*,
  780 F. Supp. 2d 336 (S.D.N.Y. 2011) .................................................................................. 13

*In re Pinterest Derivative Litig.*,
  2022 WL 484961 (N.D. Cal. Feb. 16, 2022) ........................................................................ 12

*In re PMC-Sierra, Inc. Derivative Litig.*,
  2010 U.S. Dist. LEXIS 5818 (N.D. Cal. Jan. 26, 2010) ...................................................... 18

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
  2019 WL 13020734 (N.D. Cal. May 14, 2019) .................................................................... 11

*Kamen v. Kemper Fin. Servs. Inc.*,
  500 U.S. 90 (1991) ............................................................................................................... 16

*Lewis v. Anderson*,
  692 F.2d 1267 (9th Cir. 1982) ............................................................................................. 13

*Maher v. Zapata Corp.*,
  714 F.2d 436 (5th Cir. 1983) ......................................................................................... 11, 13

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970) ............................................................................................................. 13

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) ............................................................................................................. 18

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................................ 17

*Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ......................................................................................... 10, 11

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ............................................................................................... 15

*True v. Am. Honda Motor Co.*,
  749 F. Supp. 2d 1052 (C.D. Cal. Mar. 25, 2009) .......................................................... 11, 14

iii

NOTICE OF MOTION, UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT,
AND MEMORANDUM OF POINTS AND AUTHORITIES

LEAD CASE NO. 4:20-cv-09257-HSG

*United States v. McInnes*,
    556 F.2d 436 (9th Cir. 1977) .............................................................................................. 10

*Villanueva v. Morpho Detection, Inc.*,
    2015 WL 4760464 (N.D. Cal. Aug. 12, 2015) ...................................................................... 14

*Weinberg Center for Corporate Governance v. First Nat'l Bank*,
    216 U.S. 582 (1910) ............................................................................................................. 10

**OTHER AUTHORITIES**

*Manual for Complex Litigation*, §21.632 (4th ed. 2004) ........................................................... 11

**RULES**

Fed. R. Civ. P. 23.1 ...........................................................................................................2, 11, 17

NOTICE OF MOTION, UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT,
AND MEMORANDUM OF POINTS AND AUTHORITIES

LEAD CASE NO. 4:20-cv-09257-HSG

**TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

PLEASE TAKE NOTICE that on August 29, 2024, at 2:00 p.m., plaintiffs Vishal Mehta, Yao Hong Kok, and Brad Shuman (collectively, "Plaintiffs")[1] will move before the Honorable Haywood S. Gilliam, Jr., United States District Court Judge, to grant preliminary approval of the settlement set forth in the Stipulation of Settlement dated July 23, 2024 (the "Stipulation" or "Settlement"),[2] and filed herewith (the "Motion"). The Stipulation resolves all derivative claims in the above-captioned consolidated stockholder derivative action (the "Action") brought on behalf of Lyft, Inc. ("Lyft" or the "Company").

Plaintiffs' unopposed Motion is based on the attached Memorandum of Points and Authorities, the Stipulation and exhibits thereto, the Declaration of Gregory M. Nespole and exhibits thereto, all prior pleadings and proceedings, and such additional evidence or argument as may be required by the Court.

---

[1] Ron Chenoy, formerly a plaintiff in the above-captioned consolidated action, is no longer participating in the case.

[2] Unless otherwise noted, all capitalized terms herein shall have the same definition as set forth in the Stipulation, attached to the Declaration of Gregory M. Nespole in Support of Unopposed Motion for Preliminary Approval of Derivative Settlement ("Nespole Decl.") as Exhibit 1.

1

NOTICE OF MOTION, UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT,
AND MEMORANDUM OF POINTS AND AUTHORITIES

LEAD CASE NO. 4:20-cv-09257-HSG

**STATEMENT OF ISSUES TO BE DECIDED**

Whether the proposed Settlement is within the range of possible approval such that notice of the Settlement should be disseminated to Lyft stockholders and a date set for the Settlement Hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Pursuant to Federal Rule of Civil Procedure 23.1(c), Plaintiffs respectfully submit this memorandum in support of their unopposed Motion for preliminary approval of the Settlement of stockholder derivative claims brought on behalf of Lyft.

## I.    INTRODUCTION

In the Action, Plaintiffs assert claims on behalf of Lyft against the Individual Defendants[3] for alleged breaches of fiduciary duties, unjust enrichment, abuse of control, gross mismanagement, waste of corporate assets, and for contribution under Section 11(f) of the Securities Act of 1933 (the "Securities Act") and 21D of the Securities Exchange Act of 1934 (the "Exchange Act"). After extensive, arm's-length negotiations among the Plaintiffs, the Individual Defendants, and nominal defendant Lyft (collectively, the "Settling Parties"), the Settling Parties reached an agreement to resolve the Action, as set forth in the Stipulation.

In connection with the Settlement, Lyft has agreed to adopt and/or maintain several corporate governance reforms that directly address the wrongdoing alleged in the Action and that will provide long-term substantial benefits to Lyft and its stockholders (the "Reforms"). *See* Stipulation, Exhibit A. The Reforms include, among other things: (i) improved efforts to ensure that riders and drivers are aware of Lyft's safety products and features, including the Alert 911

---

[3] "Individual Defendants" means Logan Green, John Zimmer, Brian Roberts, Prashant (Sean) Aggarwal, Jonathan Christodoro, Ben Horowitz, Valerie Jarrett, David Lawee, Hiroshi Mikitani, Ann Miura-Ko, and Mary Agnes (Maggie) Wilderotter.

2

NOTICE OF MOTION, UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT,
AND MEMORANDUM OF POINTS AND AUTHORITIES

LEAD CASE NO. 4:20-cv-09257-HSG

Silently feature; (ii) enhanced training in compliance and Company driver and user safety; (iii) publication of a link to Lyft's Compliance and Ethics Hotline on the Company's website; (iv) amendments to Lyft's Clawback Policy; (v) amendments to the Charter of the Compensation Committee allowing the Compensation Committee to evaluate and recommend changes to independent director compensation; (vi) amendments to Lyft's Code of Business Conduct and Ethics to include further guidance to employees about the seriousness of the provisions stated therein; and (vii) improvements to the Company's Corporate Governance Guidelines. The Reforms are outlined in full in Exhibit A to the Stipulation. Lyft has agreed to keep the Reforms in place for at least three (3) years. *See id.*

Significantly, Lyft and the Individual Defendants acknowledge and agree that the Reforms are significant and extensive and confer substantial benefits upon Lyft and its shareholders. Stipulation, §V, ¶2.1. Lyft and the Individual Defendants also acknowledge that the prosecution and settlement of the Action was a substantial and material factor in the Company's decision to adopt and/or implement the Reforms. *Id.*

In addition, Plaintiffs' Counsel's recommendation that the Court approve the Settlement is based on decades of experience in stockholder derivative litigation, and is informed by their extensive independent investigation, careful review and analysis of public and non-public documents, rigorous evaluation of the strengths and weaknesses of the claims and defenses, thorough analysis of Lyft's corporate governance and best practices, and careful evaluation of the value of the Reforms. *See* Stipulation, §II; Exhibits 2 and 3 to Nespole Decl. (firm resumes of The Brown Law Firm, P.C. and Levi & Korsinsky, LLP, respectively).

Following the Settling Parties' agreement in principle on the substantive terms of the settlement, the Settling Parties negotiated the attorneys' fees and expenses that would be payable

3

NOTICE OF MOTION, UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT,
AND MEMORANDUM OF POINTS AND AUTHORITIES

LEAD CASE NO. 4:20-cv-09257-HSG

by Lyft's insurers in recognition of the substantial benefits achieved through the Settlement. In recognition of the substantial benefits conferred upon Lyft as a direct result of the prosecution and Settlement of the Action, and subject to Court approval, the Individual Defendants shall cause their insurers to pay Plaintiffs' Counsel the agreed-to amount of $700,000 (the "Fee and Expense Amount"). Stipulation, §V, ¶4.1. Plaintiffs also seek modest service awards in the amount of $1,500 each (the "Service Awards"), to be paid from the Fee and Expense Amount, for their participation and efforts in the prosecution of the Action. Stipulation, §V, ¶4.2.

At this preliminary approval stage, the Court need only conclude that the proposed Settlement is within the range of resolutions that might ultimately be found to be fair, reasonable, and adequate, such that notice of the Settlement should be provided to Applicable Lyft Shareholders, and the Settlement Hearing scheduled. Plaintiffs respectfully submit that the Settlement easily meets this standard and request that the Court enter the Settling Parties' proposed Preliminary Approval Order (substantially in the form of Exhibit B to the Stipulation): (i) granting preliminary approval of the Settlement as set forth in the Stipulation; (ii) approving the form and content of the Notice of the Settlement to Applicable Lyft Shareholders; and (iii) setting a date for the hearing to consider final approval of the Settlement (the "Settlement Hearing").

Defendants do not oppose the Motion or any of the requested relief.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Factual Background

Lyft maintains a peer-to-peer marketplace for on-demand ridesharing, representing one of the largest multimodal transportation networks in the United States and Canada. Stipulation, §I. In the Action, Plaintiffs allege that, in breach of their fiduciary duties, the Individual Defendants failed to, *inter alia*: (1) prevent or remediate the rampant sexual and physical assault committed

4

NOTICE OF MOTION, UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT,
AND MEMORANDUM OF POINTS AND AUTHORITIES

LEAD CASE NO. 4:20-cv-09257-HSG

by Lyft drivers against Lyft passengers; (2) provide an adequate reporting mechanism, oversight of personnel, training, or disciplinary avenues to prevent or at least remedy the known problem of sexual and physical assault; or (3) implement an adequate background check system to effectively screen Lyft drivers, particularly drivers with known histories of committing past acts of sexual misconduct and/or harassment. ¶19.[4] Plaintiffs further allege that the Individual Defendants breached their fiduciary duties by making a series of false and misleading statements in connection with Lyft's March 28, 2019 initial public offering ("IPO") throughout the Relevant Period. ¶¶ 1, 16.

According to Plaintiffs, the alleged false and/or misleading statements failed to disclose, among other things, that: (1) passengers had reported to Lyft being verbally and physically assaulted, sexually harassed, and raped by Lyft drivers even prior to the IPO; (2) it was likely that Lyft would sustain damage to its reputation and also be subject to legal liability as a consequence of numerous and still increasing sexual assaults perpetrated by the Company's drivers; (3) numerous riders of the Company's electronic bikes were caused to sustain injuries such as scrapes, bruising, broken bones, and damaged limbs as a result of a defect in the braking system of Lyft's electronic bikes; (4) riders injured by the defective braking system had complained to the Company before Lyft went public on March 28, 2019; (5) Lyft's transformation into a multimodal transportation network was being disrupted by safety issues with their bikes; and (6) Lyft failed to maintain internal controls. ¶16.

---

[4] Unless otherwise noted, references to "¶__" or "¶¶__" are to the Verified Shareholder Derivative Complaint filed by Plaintiff Hong Kok on December 21, 2020.

NOTICE OF MOTION, UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT,
AND MEMORANDUM OF POINTS AND AUTHORITIES

LEAD CASE NO. 4:20-cv-09257-HSG

**B.     Procedural Background**

**1.     The Derivative Litigation**

On September 30, 2020, Plaintiff Vishal Mehta filed a shareholder derivative action in the United States District Court for the District of Delaware against the Individual Defendants, on behalf of nominal defendant Lyft, captioned *Mehta v. Green*, Case No. 1:20-cv-01326 (D. Del.) (the "*Mehta* Action") alleging breaches of fiduciary duty, unjust enrichment, abuse of control, gross mismanagement, waste of corporate assets, and for contribution under Section 11(f) of the Securities Act and Section 21D of the Exchange Act. *See* Stipulation, §I(C). On December 28, 2020, the *Mehta* Action was transferred to this Court and assigned Case No. 4:20-cv-09364. *See id*.

On December 21, 2020, then-plaintiff Ron Chenoy filed a shareholder derivative action in this Court against the Individual Defendants, on behalf of nominal defendant Lyft, captioned *Chenoy v. Zimmer*, Case No. 4:20-cv-09257 (N.D. Cal.) (the "*Chenoy* Action") alleging substantially similar claims as the *Mehta* Action. *See id*.

That same day, Plaintiff Yao Hong Kok filed a shareholder derivative action in this Court against the Individual Defendants, on behalf of nominal defendant Lyft, captioned *Hong Kok v. Green*, Case No. 3:20-cv-09272 (N.D. Cal.) (the "*Hong Kok* Action") alleging substantially similar claims as the *Mehta* and *Chenoy* Actions. *See id*.

On January 4, 2021, Magistrate Judge Jacqueline Scott Corley consolidated the *Mehta* Action, the *Hong Kok* Action, and the *Chenoy* Action into the above-captioned Action and appointed The Brown Law Firm, P.C. and Levi & Korsinsky, LLP as Co-Lead Counsel for Plaintiffs in the Action. *See id*. On February 17, 2021, at the parties' joint request, the Court stayed the case. *See* Stipulation, §I(C).

6

Notice of Motion, Unopposed Motion for
Preliminary Approval of Derivative Settlement,
and Memorandum of Points and Authorities

Lead Case No. 4:20-cv-09257-HSG

On February 22, 2021, Plaintiff Brad Shuman filed a shareholder derivative action against the Individual Defendants, on behalf of nominal defendant Lyft, captioned *Shuman v. Green*, Case No. 4:21-cv-01263 (N.D. Cal.) (the "*Shuman* Action") alleging substantially similar claims as the *Mehta*, *Chenoy*, and *Hong Kok* Actions. *See id*. On March 10, 2021, the *Shuman* Action was consolidated for all purposes, including pre-trial proceedings and trial, with the Action. *See id*.

On January 19, 2024, the Court lifted the stay of the above-captioned Action. *See id*. On March 26, 2024, Plaintiffs designated the Verified Shareholder Derivative Complaint filed in the *Hong Kok* Action on December 21, 2020, as the operative complaint in this Action. *See id*.

On May 28, 2024, the Settling Parties filed a Joint Notice of Settlement, informing the Court, among other things, that the Settling Parties had reached a settlement in principle and were in the process of preparing a stipulation of settlement. ECF No. 51.

### 2.  Related Securities Litigation

On April 15, 2019, Frederic Lande filed the first complaint in any jurisdiction that alleged securities violations arising out of the Lyft IPO in the Superior Court of the State of California, County of San Francisco (the "*Lande* Action"). *See* Stipulation, §I(B). After the filing of this complaint, six related lawsuits were filed in San Francisco Superior Court, and were ultimately consolidated with the *Lande* Action (together, the "State Securities Action"). *See id*.

On May 17, 2019, Lyft investors filed a securities class action, entitled *In re Lyft, Inc. Securities Litigation*, Lead Case No. 4:19-cv-02690-HSG, in which plaintiffs asserted federal securities claims against the Company and certain of its current and former officers and directors (the "Federal Securities Action"). *See* Stipulation, §I(A). On September 8, 2020, the Court granted in part and denied in part defendants' motions to dismiss the Federal Securities Action. *See id*. On August 20, 2021, the Court granted plaintiffs' motion for class certification. *See id*.

NOTICE OF MOTION, UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT,
AND MEMORANDUM OF POINTS AND AUTHORITIES

LEAD CASE NO. 4:20-cv-09257-HSG

On January 25, 2022, the state court denied plaintiffs' motion for class certification of the State Securities Action and stayed the State Securities Action based on the pendency of the parallel Federal Securities Action. *See* Stipulation, §I(B). On February 8, 2022, the parties to the Federal Securities Action informed the court by letter that they had reached an agreement-in-principle to settle the Federal Securities Action on a class-wide basis. *See* Stipulation, §I(A). On August 7, 2023, the Court granted final approval to the class action settlement. *See id.* On September 11, 2023, judgment was entered and the Federal Securities Action was terminated. *See id.*

After settlement of the Federal Securities Action was finally approved, the plaintiffs in the State Securities Action voluntarily dismissed their claims. *See* Stipulation, §I(B). The State Securities Action was dismissed on October 31, 2023. *See id.*

### 3.    Settlement Negotiations

Shortly after the Court granted final approval to the class action settlement, counsel to Plaintiffs, the Individual Defendants, and nominal defendant Lyft began to discuss whether it may be possible to resolve this Action without the need for costly and protracted litigation.  The Settling Parties began to discuss a possible settlement based on corporate therapeutics designed to prevent a recurrence of the alleged misconduct. Starting in October 2023 and for over eight months thereafter, the Settling Parties exchanged iterative settlement proposals and negotiated at arm's length until the Settling Parties agreed to the Reforms in May 2024.

Lyft and the Individual Defendants acknowledge and agree that the Reforms are significant and extensive and confer substantial benefits upon Lyft and its shareholders. Stipulation, §V, ¶2.1. Lyft and the Individual Defendants also acknowledge that the prosecution and settlement of the Action was a substantial and material factor in the Company's decision to adopt and/or implement the Reforms. *Id.*

NOTICE OF MOTION, UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT,
AND MEMORANDUM OF POINTS AND AUTHORITIES

LEAD CASE NO. 4:20-cv-09257-HSG

Following the Settling Parties' agreement in principle on the substantive terms of the settlement, the Settling Parties negotiated the attorneys' fees and expenses that would be payable by Lyft's insurers in recognition of the substantial benefits achieved through the Settlement. In recognition of the substantial benefits conferred upon Lyft as a direct result of the prosecution and Settlement of the Action, and subject to Court approval, the Individual Defendants shall cause their insurers to pay Plaintiffs' Counsel the agreed-to Fee and Expense Amount of $700,000. Stipulation, §V, ¶4.1.

## III.   TERMS OF THE PROPOSED SETTLEMENT

The Settlement addresses the core concerns raised in the Action and offers Lyft and its stockholders the substantial benefit of immediate and lasting corporate governance reforms that will provide value to Lyft for years to come. *See* Stipulation, §V, ¶2.1. The Reforms provide, among other things, that Lyft, for a period of not less than three (3) years, adopt the following Reforms:

- make a link to its Compliance and Ethics Hotline publicly available on Lyft's Investor Relations webpage;

- amendments to its Clawback Policy, effected on October 2, 2023, including robust provisions for providing recoupment in the event of material negative restatements;

- enhance the membership of the Company's Culture of Ethics and Compliance Committee to include the Company's Vice President, Safety and Customer Care (or future equivalent leader of user safety) as a standing member of the committee;

- make efforts to share safety features and products with riders and drivers in order to enhance their efficacy, including by, over the next twelve months, making at least one

NOTICE OF MOTION, UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT,
AND MEMORANDUM OF POINTS AND AUTHORITIES

LEAD CASE NO. 4:20-cv-09257-HSG

additional post on its blog (https://www.lyft.com/blog) highlighting key in-app safety features available to riders and drivers;

- amendments to its code of business conduct and ethics, effected on October 26, 2021, including further guidance to employees about the seriousness of the provisions stated therein;

- amendments to the Compensation Committee Charter, effected on July 25, 2023, including enhanced duties of the Compensation Committee as they relate to changes in compensation, the Company's Clawback Policy, and hiring strategies, including diversity and inclusion efforts; and

- amendments to the Company's Corporate Governance Guidelines, effected on October 26, 2023, including specifying limitations on executive director board membership, director training, and leadership development.

The above is a summary of the Reforms, which are detailed in Exhibit A to the Stipulation. The substantial benefits conferred on Lyft as a result of the Reforms merit preliminary approval of the Settlement.

## IV.    LEGAL STANDARDS FOR PRELIMINARY APPROVAL OF SETTLEMENT

It is well-settled that "compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910);[5] *see also Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ("strong judicial policy…favors settlements" in complex cases); *Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 635 (9th Cir. 1982) (recognizing that the "settlement process [is] favored in the law"); *United States v. McInnes*, 556

---

[5] Unless otherwise noted, all internal citations are omitted and emphasis is added.

10

NOTICE OF MOTION, UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT,
AND MEMORANDUM OF POINTS AND AUTHORITIES

LEAD CASE NO. 4:20-cv-09257-HSG

F.2d 436, 441 (9th Cir. 1977) (explaining that "there is an overriding public interest in settling and quieting litigation"). Settlements are particularly favored in litigation like this Action "[b]ecause shareholder derivative actions are 'notoriously difficult and unpredictable[.]'" *In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544, at *2 (N.D. Cal. Dec. 22, 2008); *see also In re Wells Fargo & Co. S'holder Derivative Litig.*, 2019 WL 13020734, at *6 (N.D. Cal. May 14, 2019) ("courts have recognized that it is often difficult for plaintiffs to prevail in derivative actions").[6]

Rule 23.1 requires the Court to approve any settlement, voluntary dismissal, or compromise of the claims by the parties. Fed. R. Civ. P. 23.1(c). "Review of a proposed settlement generally proceeds in two stages, a hearing on preliminary approval followed by a final fairness hearing." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1062 (C.D. Cal. Mar. 25, 2009) (citing *Manual for Complex Litigation*, §21.632 (4th ed. 2004) ("*Manual*")).

While Plaintiffs believe that the Settlement merits final approval, the Court need only ***preliminarily*** approve the Settlement at this time. At the preliminary approval stage, the Court's review of the proposed Settlement is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625; *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). This is a low threshold, requiring the Court to determine only "whether a proposed settlement is 'within the range of possible approval' and whether or not notice should be sent to" stockholders. *True*, 749 F. Supp. 2d at 1063; *see also Manual*, §13.14 ("First, the [court] reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice

---

[6] *See also Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) ("Settlements of shareholder derivative actions are particularly favored because such litigation is 'notoriously difficult and unpredictable.'").

NOTICE OF MOTION, UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT,
AND MEMORANDUM OF POINTS AND AUTHORITIES

LEAD CASE NO. 4:20-cv-09257-HSG

and a hearing. If so, the final decision on approval is made after the hearing."). Where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, … and falls within the range of possible approval, preliminary approval is granted." *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

Thus, at this preliminary stage, the Court need only conclude that the Settlement is within the range of possible approval for the purposes of providing notice to Applicable Lyft Shareholders and holding the Settlement Hearing.

## V.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Plaintiffs respectfully submit that the Settlement is within the range of possible approval and should therefore be preliminarily approved.

### A.   The Settlement Confers Substantial Benefits on Lyft

In deciding whether to approve the settlement of a derivative action, "[t]he principal factor to be considered…is the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest." *In re Pinterest Derivative Litig.*, 2022 WL 484961, at *3 (N.D. Cal. Feb. 16, 2022) (citing *In re Apple Computer, Inc. Derivative Litig.*, 2008 WL 4820784, at *2 (N.D. Cal. Nov. 5, 2008)); *In re OSI Sys.*, 2017 U.S. Dist. LEXIS 221033, at *5-6 (C.D. Cal. May 2, 2017). Courts may weigh a variety of other factors, including: "the strength of the plaintiffs' case, the risk, expense, complexity, and likely duration of further litigation, the amount offered in settlement, the stage of proceedings, the experience and views of counsel, and the reaction of class members to the proposed settlement." *In re Hewlett-Packard Co. S'holder Derivative Litig.*, 716 F. App'x 603, 605 (9th Cir. 2017); *Hanlon*, 150 F.3d at 1026.

NOTICE OF MOTION, UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT,
AND MEMORANDUM OF POINTS AND AUTHORITIES

LEAD CASE NO. 4:20-cv-09257-HSG

Courts have long "recognized that corporate governance reforms such as those achieved here provide valuable benefits to public companies." *In re NVIDIA Corp. Derivative Litig.*, 2009 U.S. Dist. LEXIS 24973, at *11-12 (N.D. Cal. Mar. 18, 2009). In fact, "the effects of the suit on the functioning of the corporation may have a substantially greater economic impact on it, both long- and short-term, than the dollar amount of any likely judgment in its favor[.]" *Zapata Corp.*, 714 F.2d at 461. Courts routinely approve settlements where corporate governance reforms are designed effectively to prevent the same or similar alleged wrongdoing that precipitated the litigation. *See, e.g.*, *Apple Computer*, 2008 WL 4820784, at *2; *Lewis v. Anderson*, 692 F.2d 1267, 1271 (9th Cir. 1982) (finding corporate governance reforms "sufficiently beneficial" to warrant settlement approval and fee award); *In re Pfizer Inc. S'holder Derivative Litig.*, 780 F. Supp. 2d 336, 342 (S.D.N.Y. 2011) (approving settlement where therapeutics "significantly improved institutional structure for detecting and rectifying the types of wrongdoing that have, in recent years, caused extensive harm to the company").

The Reforms confer substantial benefits on Lyft, thus meriting preliminary approval of the Settlement. *See supra*, section III. Strong corporate governance is fundamental to a corporation's well-being and success. Accordingly, courts have recognized that corporate governance reforms provide valuable benefits for public companies. *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395-96 (1970) ("[A] corporation may receive a 'substantial benefit' from a [stockholders' action], justifying an award of counsel fees, regardless of whether the benefit is pecuniary in nature[,]" because "corporate therapeutics…furnish a benefit to all shareholders by providing an important means of enforcement of [a corporation's director and officer obligations].").

Collectively, the Reforms will provide long-term benefits to the Company and its stockholders by addressing the wrongdoing alleged in the Action and strengthening Lyft's overall

NOTICE OF MOTION, UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT,
AND MEMORANDUM OF POINTS AND AUTHORITIES

LEAD CASE NO. 4:20-cv-09257-HSG

corporate governance practices. *See* Stipulation, §V, ¶2.1. Among several additional Reforms summarized above, the Reforms address the alleged misconduct by: (i) ensuring that the Company makes riders and drivers aware of safety features and products; (ii) allowing the Compensation Committee to evaluate and make recommendations regarding compensation for independent directors; and (iii) limiting the additional public company boards on which Lyft executive directors can serve. These Reforms, among the others outlined in full in Exhibit A to the Stipulation, will strengthen the Company going forward. Moreover, Lyft has agreed to maintain the Reforms for a minimum of three years, sufficient time to ensure that they become embedded in the Company's practices and corporate culture, with continuing benefits even after the expiration of the three-year commitment term. *See Cohn v. Nelson*, 375 F. Supp. 2d 844, 850 (E.D. Mo. 2005) (three-year commitment to reforms will "provide meaningful ways of avoiding the problems [the company] experienced in the recent past").

In sum, the substantial and lasting benefits conferred as a result of the Reforms demonstrate that the Settlement is "fair, reasonable and adequate to all concerned[,]" and "within the range of possible approval." *Officers for Just.*, 688 F.2d at 625; *True*, 749 F. Supp. 2d at 1063.

## B.     The Settlement Is the Product of Arm's-Length Negotiations

Settlements achieved through extensive, arm's-length negotiations conducted by experienced, well-informed counsel enjoy a "presumption of fairness." *Villanueva v. Morpho Detection, Inc.*, 2015 WL 4760464, at *6 (N.D. Cal. Aug. 12, 2015) ("'An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining.'"); *see also Arnaud van der Gracht de Rommerswael v. Auerbach*, 2019 WL 7753447, at *3 (C.D. Cal. Jan. 7, 2019) ("strong presumption of fairness" attached to settlement that "was the product of arms-length negotiations between experienced and well-informed counsel"); *In re*

Notice of Motion, Unopposed Motion for
Preliminary Approval of Derivative Settlement,
and Memorandum of Points and Authorities

Lead Case No. 4:20-cv-09257-HSG

*Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *8 (C.D. Cal. Jul. 28, 2014); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution"). This presumption applies here because the Settlement was negotiated between experienced counsel possessing a firm understanding of the strengths and weaknesses of the claims and defenses asserted, is the product of significant give and take by the Settling Parties, and was reached after extensive negotiations between the Settling Parties and their respective counsel. *See* Stipulation, §II.

The Settling Parties are represented by zealous and able counsel with extensive experience in complex derivative litigation, and who have unique insight into the legal and factual issues presented. In addition, counsel for Plaintiffs have conducted extensive research and investigation into the Individual Defendants' alleged misconduct and the corresponding alleged damages to the Company. This investigation included, among other things: (i) reviewing Lyft's press releases, public statements, U.S. Securities and Exchange Commission ("SEC") filings, and securities analysts' reports and advisories about the Company and its financial condition; (ii) reviewing related media reports about the Company; (iii) researching applicable law with respect to the claims alleged in the Federal Derivative Actions and potential defenses thereto; (iv) preparing and filing derivative complaints; (v) conducting damages analyses; (vi) reviewing and analyzing relevant documents in the Federal Securities Action and in the State Securities Action; (vii) researching corporate governance best practices; (viii) researching and preparing correspondence related to the settlement demands; and (ix) negotiating this Settlement with Defendants. *See* Stipulation, §II. The accumulation of the information discovered through the above efforts permitted Plaintiffs and Plaintiffs' Counsel to be well-informed about the strengths

NOTICE OF MOTION, UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT,
AND MEMORANDUM OF POINTS AND AUTHORITIES

LEAD CASE NO. 4:20-cv-09257-HSG

1  and weaknesses of the derivative claims and to engage in effective settlement negotiations with

2  Defendants.

3  As a result of the Settling Parties' settlement negotiations, Plaintiffs obtained a Settlement

4  that provides substantial benefits to the Company while eliminating the expense, risk, and delay

5  inherent in such complex litigation. Although Plaintiffs' Counsel believes that the derivative

6  claims are meritorious, proving liability was by no means a foregone conclusion. Had Plaintiffs

7  continued to litigate, they would have faced the risk that the Action may not have withstood

8  challenges at the pleading stage, especially given the difficult standard for pleading demand

9  futility; demand futility under Delaware law, in particular, presents a significant pleadings-stage

10  hurdle for derivative plaintiffs. *See Kamen v. Kemper Fin. Servs. Inc.*, 500 U.S. 90, 96 (1991)

11  (demand futility requirement is satisfied only under "'extraordinary conditions'"). Here, Plaintiffs

12  would need to establish demand futility as to at least four of the seven directors on Lyft's Board

13  when the complaint was filed in the Action, five of whom the Company deemed independent. *See,*

14  *e.g.*, ¶¶245-273.

15

16  Significant risks also remained in getting past any subsequent motions for summary

17  judgment and obtaining a favorable judgment after trial. *See, e.g.*, *In re Apollo Grp., Inc. Sec.*

18  *Litig.*, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008), *rev'd & remanded*, 2010 WL 5927988 (9th Cir.

19  June 23, 2010) (evidence insufficient to support jury verdict for shareholders of $277 million).

20  Moreover, the amount of recoverable damages would have undoubtedly posed significant issues

21  and would have been subject to further litigation. *See In re AOL Time Warner S'holder Derivative*

22  *Litig.*, 2006 WL 2572114, at *5 (S.D.N.Y. Sept. 6, 2006) ("Even assuming that Plaintiffs were

23  able to successfully establish the defendants' liability, they then would be tasked with proving

24  highly contested damages."). The Settlement eliminates these and other risks of continued

25

NOTICE OF MOTION, UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT,
AND MEMORANDUM OF POINTS AND AUTHORITIES

LEAD CASE NO. 4:20-cv-09257-HSG

litigation, including the very real risk of no recovery for Lyft after years of additional, expensive litigation.

Moreover, the Settling Parties' agreement that the Settlement is in the best interests of Lyft and its stockholders and that the Reforms will improve the functioning of the Company, *see* Stipulation, §V, ¶2.1, further supports that the Settlement is within the range of what may be approved as fair, reasonable, and adequate, and should be granted preliminary approval. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."); *see also In re First Cap. Holdings Corp. Fin. Prods. Sec. Litig.*, 1992 WL 226321, at *2 (C.D. Cal. June 10, 1992) (finding the belief of counsel that the proposed settlement represented the most beneficial result for the class to be a compelling factor in approving settlement); *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.").[7]

## VI.    NOTICE TO STOCKHOLDERS

Federal Rule of Civil Procedure 23.1 requires "[n]otice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders." The Settling Parties seek Court approval of the proposed form and manner of notice of the Settlement to Applicable Lyft Shareholders as set forth in the Stipulation. The proposed notice describes in plain English the terms and conditions of the proposed Settlement, including: (i) the

---

[7] While the agreed-to Fee and Expense Amount is also fair and reasonable, the Court need not address fees until final approval. Subject to Court approval, Lyft has agreed to cause its insurers to pay attorneys' fees and expenses to Plaintiffs' Counsel in the amount of $700,000. *See* Stipulation, ¶4.1. Plaintiffs' Counsel will provide further information in support of the Fee and Expense Amount in their papers in support of final approval of the Settlement.

NOTICE OF MOTION, UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT,
AND MEMORANDUM OF POINTS AND AUTHORITIES

LEAD CASE NO. 4:20-cv-09257-HSG

facts and considerations that caused the Settling Parties and their respective counsel to conclude that the proposed Settlement is fair, reasonable, adequate, and in Lyft's best interests; (ii) the procedure for objecting to the proposed Settlement; and (iii) the date, place, and time of the Settlement Hearing. *See* Stipulation, Exhibits C-D. The proposed notice should be therefore approved, since it is reasonably calculated to apprise Applicable Lyft Shareholders of the pendency and terms of the Settlement and afford them an opportunity to present their objections, if any. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").

The Settling Parties have agreed that notice of the Settlement to Lyft stockholders shall be made by: (i) Lyft publishing the Summary Notice one time in the national edition of *Investor's Business Daily*; (ii) Plaintiffs' Counsel publishing the Summary Notice one time over *PR Newswire*; and (iii) Lyft posting the Stipulation (and exhibits thereto) and Notice on an internet page that Lyft shall create for this purpose, which shall be accessible via a link on the "Investors" page of Lyft's website through the date of the Settlement Hearing, the address of which shall be contained in the Notice and Summary Notice. *See* Stipulation, ¶3.3.

The proposed manner of notice via publication has gained broad acceptance in light of the rapid transition of the investment community from a paper-based to a web-based disclosure system, and the notice program employed in this Settlement has been widely used in similar shareholder derivative settlements and approved by numerous courts as meeting due process. *See, e.g.*, *In re PMC-Sierra, Inc. Derivative Litig.*, 2010 U.S. Dist. LEXIS 5818, at *4 (N.D. Cal. Jan. 26, 2010) (approving notice to absent shareholders by publication in *Investor's Business Daily* and posted on company's website); *Arace v. Thompson*, 2011 U.S. Dist. LEXIS 93105, at *4 (S.D.N.Y.

18

NOTICE OF MOTION, UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT,
AND MEMORANDUM OF POINTS AND AUTHORITIES

LEAD CASE NO. 4:20-cv-09257-HSG

Aug. 17, 2011) (finding that notice published in *Investor's Business Daily* was legally adequate to place absent shareholders on constructive notice of the settlement); *In re Am. Capital S'holder Derivative Litig.*, 2013 U.S. Dist. LEXIS 90973, at *6 (D. Md. June 26, 2013) (issuing preliminary approval where notice was published in *Investor's Business Daily*).

Accordingly, Plaintiffs respectfully hereby make the unopposed request that the Court approve the form and manner of Notice as set forth in the Stipulation and described herein.

## VII.    PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Settling Parties request that the Court set a schedule for: (i) dissemination of notice of the Settlement to Applicable Lyft Shareholders; (ii) Lyft stockholders' comments or objections to the Settlement; and (iii) the Settlement Hearing. Plaintiffs respectfully propose the following schedule:

| Event | Deadline |
|---|---|
| Notice of the Settlement published and posted in accordance with the Preliminary Approval Order | Within fifteen (15) business days after entry of the Preliminary Approval Order |
| Deadline for opening briefs and supporting documents in support of final approval of the Settlement | At least twenty-eight (28) calendar days before the Settlement Hearing |
| Deadline for objections to the Settlement | At least twenty-one (21) calendar days prior to the Settlement Hearing |
| Deadline for responses to stockholder objections | At least seven (7) calendar days before the Settlement Hearing |
| Deadline to file an affidavit or declaration regarding the publication and posting of the Summary Notice, Notice, and Stipulation | At least twenty-one (21) calendar days prior to the Settlement Hearing |
| Deadline to file any reply papers in support of final approval of the Settlement | At least twenty-one (21) calendar days before the Settlement Hearing |

NOTICE OF MOTION, UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT,
AND MEMORANDUM OF POINTS AND AUTHORITIES

LEAD CASE NO. 4:20-cv-09257-HSG

| Settlement Hearing | At least forty-five (45) calendar days after Notice is given |
| --- | --- |

## VIII.   CONCLUSION

The Settlement is an excellent result in light of the risks inherent in the Action and the substantial cost and complexity if the Action proceeded to trial. Accordingly, the Settlement is "within the range" of what may be approved as fair, reasonable, and adequate, and should be preliminarily approved.

NOTICE OF MOTION, UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT,
AND MEMORANDUM OF POINTS AND AUTHORITIES

LEAD CASE NO. 4:20-cv-09257-HSG

Dated: July 23, 2024

Respectfully submitted,

**LEVI & KORSINSKY, LLP**

/s/ *Gregory M. Nespole*

Gregory M. Nespole (*pro hac vice*)
33 Whitehall Street, 17th Floor
New York, New York 10004
Telephone: 212.363.7500
Facsimile: 212.363.7171
Email: gnespole@zlk.com

Adam Apton (SBN 316506)
1160 Battery Street East, Suite 100 - #3425
San Francisco, CA 94111
Telephone: 415-373-1671
Facsimile: 415-484-1294
Email: aapton@zlk.com

**THE BROWN LAW FIRM, P.C.**
Robert C. Moest, Of Counsel, SBN 62166
2530 Wilshire Boulevard, Second Floor
Santa Monica, CA 90403
Telephone: (310) 915-6628
Facsimile: (310) 915-9897
Email: RMoest@aol.com

Timothy Brown (*pro hac vice*)
767 Third Avenue, Suite 2501
New York, NY 11771
Telephone: (516) 922-5427
Facsimile: (516) 344-6204
Email: tbrown@thebrownlawfirm.net

*Co-Lead Counsel for Plaintiffs*

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, SBN 219683
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Additional Counsel for Plaintiffs*

NOTICE OF MOTION, UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT,
AND MEMORANDUM OF POINTS AND AUTHORITIES

LEAD CASE NO. 4:20-cv-09257-HSG