UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re Lyft, Inc. Derivative Litigation | Case No. 20-cv-09257-HSG <br><br> **ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** <br><br> Re: Dkt. No. 60 |

Pending before the Court is Plaintiffs' unopposed motion for preliminary approval of the settlement reached in their consolidated shareholder derivative action. *See* Dkt. No. 60 ("Mot."). The Court held a hearing on the motion on August 29, 2024. For the reasons detailed below, the Court **GRANTS** the motion.

## I. BACKGROUND

### A. Factual Allegations

This is a shareholder derivative action on behalf of nominal defendant Lyft, Inc. ("Lyft") against several Lyft officers and directors (collectively "Individual Defendants").[1] Plaintiffs allege that the Individual Defendants breached their fiduciary duty by failing, among other things, to: "(1) prevent or remediate the rampant sexual and physical assault committed by Lyft drivers against Lyft passengers; (2) provide an adequate reporting mechanism, oversight of personnel, training, or disciplinary avenues to prevent or at least remedy the known problem of sexual and physical assault; or (3) implement an adequate background check system to effectively screen Lyft

---

[1] The "Individual Defendants" include Logan Green, John Zimmer, Brian Roberts, Prashant (Sean) Aggarwal, Jonathan Christodoro, Ben Horowitz, Valerie Jarrett, David Lawee, Hiroshi Mikitani, Ann Miura-Ko, and Mary Agnes (Maggie) Wilderotter.

drivers, particularly drivers with known histories of committing past acts of sexual misconduct and/or harassment." Mot. at 9–10; Verified Shareholder Derivative Complaint ("Compl.") ¶ 19.[2] Plaintiffs further allege that these Individual Defendants made "a series of false and misleading statements in connection with Lyft's March 28, 2019 initial public offering ("IPO")." Mot. at 10; Compl. ¶¶ 1, 16.[3] According to Plaintiffs, the alleged false and/or misleading statements failed to disclose that: "(1) passengers had reported to Lyft being verbally and physically assaulted, sexually harassed, and raped by Lyft drivers even prior to the IPO; (2) it was likely that Lyft would sustain damage to its reputation and also be subject to legal liability as a consequence of numerous and still increasing sexual assaults perpetrated by the Company's drivers; (3) numerous riders of the Company's electronic bikes were caused to sustain injuries such as scrapes, bruising, broken bones, and damaged limbs as a result of a defect in the braking system of Lyft's electronic bikes; (4) riders injured by the defective braking system had complained to the Company before Lyft went public on March 28, 2019; (5) Lyft's transformation into a multimodal transportation network was being disrupted by safety issues with their bikes; and (6) Lyft failed to maintain internal controls." Compl. at ¶ 16.

Based on this alleged misconduct, Plaintiffs assert claims on behalf of Lyft against the Individual Defendants for alleged breaches of fiduciary duties, unjust enrichment, abuse of control, gross mismanagement, waste of corporate assets, and for contribution under Section 11(f) of the Securities Act of 1933 and Section 21D of the Securities Exchange Act of 1934. Mot. at 7.

### B. Procedural Background

This consolidated action combines four federal shareholder derivative actions filed against the Individual Defendants on behalf of nominal defendant Lyft between September 2020 and February 2021. In January 2021, then-Magistrate Judge Jacqueline Scott Corley consolidated three of these actions: *Mehta v. Green*, Case No. 1:20-cv-01326 (D. Del.) (later Case No. 4:20-cv-

---

[2] For ease of reference, the Court refers to the PDF pages rather than the document's internal pagination unless otherwise noted.

[3] Plaintiffs designated the Verified Shareholder Derivative Complaint filed by Yao Hong Kok in *Hong Kok v. Green*, et al., Case No. 3:20-cv-09272 on December 21, 2020, as the operative Complaint in the above-captioned consolidated action. *See* Dkt. No. 50 (designation notice); *see also* Case No. 20-9272, Dkt. No. 1 ("Compl.").

1  09364 (N.D. Cal.)), *Chenoy v. Zimmer*, Case No. 4:20-cv-09257 (N.D. Cal.), and *Hong Kok v.*
2  *Green*, Case No. 3:20-cv-09272 (N.D. Cal.).  Mot. at 11; Dkt. No. 9.  In February 2021, Plaintiff
3  Brad Shuman filed a similar shareholder derivative action, *Shuman v. Green*, Case No. 4:21-cv-
4  01263 (N.D. Cal.), which the Court also consolidated into the above-captioned action.  Dkt. No.
5  37.

6       In February 2021, the Court granted the parties' request to stay this consolidated case in
7  light of *In re Lyft, Inc. Securities Litigation*, No. 4:19-cv-02690 ("Federal Securities Action"), a
8  factually-related securities class action then pending before the Court.  *See* Dkt. No. 34.  The
9  parties in that case reached a class-wide settlement, which the Court approved in August 2023, and
10 the Federal Securities Action was dismissed in October 2023.  Mot. at 13.[4]  Following the Court's
11 approval of the parties' class action settlement in the Federal Securities Action, the parties in this
12 case began settlement negotiations.  *Id*.  The parties informed the Court that they reached a
13 tentative settlement on May 28, 2024.  Dkt. No. 51.

14     **C.**    **Settlement Agreement**

15      The key terms of the Stipulation of Settlement, Dkt. No. 60-2 ("Settlement Agreement" or
16 "SA"), are as follows:

17      <u>Settlement Benefits</u>:  Lyft will keep the corporate governance reforms set forth in Exhibit
18 A of the Settlement Agreement in place for at least three years.  *See* Dkt. No. 60-2, Ex. A.  These
19 reforms include, among other things, Lyft's amended Clawback Policy, changes to Lyft's Code of
20 Business Conduct and Ethics, amendments to Lyft's Compensation Committee Charter, and
21 changes to Lyft's Corporate Governance Guidelines.  *Id*.  Lyft will also post a link to its
22 Compliance and Ethics Hotline on the Lyft website within 90 days of the settlement's final
23 approval.  *Id.*  Consistent with Exhibit A of the Settlement Agreement, Lyft will undertake efforts
24 to improve safety compliance and awareness by (1) adding a user safety executive to Lyft's
25 Culture of Ethics and Compliance Committee, and (2) promoting safety features like the "Alert
26 911 Safety Feature" and "Safety Phone Calls."  *Id.*  Within 12 months of the settlement's final

---

[4] Following the Federal Securities Action's dismissal, the Court lifted the temporary stay in this litigation.  Dkt. No. 43.

3

1    approval, Lyft will also make at least one further post on its blog (https://www.lyft.com/blog)

2    about in-app safety features available to riders and drivers. *Id.*

3         <u>Releases</u>:  Under the terms of the Settlement Agreement, the "Releasing Persons shall be

4    deemed to have fully, finally, and forever released, relinquished, and discharged the Released

5    Claims (including Unknown Claims) against the Released Persons and any and all derivative

6    claims arising out of, relating to, or in connection with the defense, settlement, or resolution of the

7    Federal Derivative Actions against the Released Persons." SA § 5.1.

> The Releasing Persons are "Plaintiffs (individually, collectively, and derivatively on behalf of Lyft), all other Applicable Lyft Shareholders, Plaintiffs' Counsel, and Lyft." *Id*. § 1.23.
>
> The Released Persons are "Lyft, the Individual Defendants, and their Related Persons." *Id.* § 1.22.
>
> Released Claims means "[A]ny and all actions, suits, claims, debts, rights, liabilities, and causes of action, whether under federal, state, local, statutory, common law, foreign law, or any other law, rule or regulation, including both known and Unknown Claims (as defined in paragraph 1.26 below), that: (a) were asserted or could have been asserted by any shareholder derivatively on behalf of Lyft, or by Lyft, against any Released Person; and (b) concern, arise out of, or relate to (i) the allegations asserted in the Federal Derivative Actions or the matters and occurrences that were alleged in the Federal Derivative Actions, or (ii) the Settlement, defense or resolution of the Federal Derivative Actions, except for any claims to enforce the Settlement. Excluded from the term 'Released Claims' are all claims alleged in the Federal Securities Action and the State Securities Action." *Id.* § 1.21.

    <u>Notice</u>: Lyft will provide notice of the proposed settlement, *see* Dkt. No 60-2, Ex. C

("Notice"), an abbreviated summary notice of the proposed settlement, *see* Dkt. No 60-2, Ex. D

("Summary Notice"), and the date of the settlement hearing to "Applicable Lyft Shareholders."

SA § 3.2.[5]  In addition, within 15 days of this Order, Lyft will (1) publish the Summary Notice

once in the national edition of *Investor's Business Daily* and (2) will post both the Settlement

---

[5] Under the terms of the Settlement Agreement, "Applicable Lyft Shareholders" means "any Person who owned Lyft common stock as of the date of the execution of this Stipulation and continues to hold their Lyft common stock as of the date of the Settlement Hearing, excluding the Individual Defendants, the officers and directors of Lyft, members of their immediate families, and their legal representatives, heirs, successors, or assigns, and any entity in which Individual Defendants have or had a controlling interest." SA § 1.1.

Agreement and the Notice on an Internet page accessible via the "Investors" page of Lyft's website. *Id.* § 3.3.  Plaintiffs' Counsel will publish the Summary Notice one time over *PR Newswire*. *Id.*

Attorneys' Fees and Costs:  Plaintiffs' counsel will seek $700,000 in attorneys' fees and expenses from the Individual Defendants' insurers. *Id.* § 4.1.

Service Award: Plaintiffs' counsel may apply to the Court for a service award of up to $1,500 for each of the Plaintiffs.  These awards are to be drawn from funds allocated for Plaintiffs' attorneys' fees and expenses.  Payment of these awards is subject to the Court's approval. *Id.* § 4.2.

## II. PRELIMINARY SETTLEMENT APPROVAL

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 23.1, "[a] derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23.1(c). "Rule 23 requires courts to employ a two-step process in evaluating a class action or derivative action settlement." *In re Wells Fargo & Co. Sharehold Derivative Litig.*, No. 16-CV-05541-JST, 2019 WL 13020734, at *4 (N.D. Cal. May 14, 2019).  First, the court "must make a preliminary determination that the settlement is fair, reasonable, and adequate" under Rule 23(e)(2). *Id.* (internal citation and quotations omitted).  Only if a settlement is "fundamentally fair, adequate, and reasonable" may it be approved. *In re Hewlett-Packard Co. S'holder Derivative Litig.*, No. 3:12-CV-06003-CRB, 2015 WL 1153864, at *3 (N.D. Cal. Mar. 13, 2015) (internal citation and quotations omitted).  "[I]f the court preliminarily approves a derivative action settlement, notice 'must be given to shareholders or members in the manner that the court orders.'" *In re Wells Fargo & Co. Sharehold Derivative Litig.*, 2019 WL 13020734, at *4 (quoting Fed. R. Civ. P. 23.1(c)).  The court then holds a hearing to "make a final determination whether the settlement is 'fair, reasonable, and adequate.'" *Id.* (quoting Fed. R. Civ. P. 23(e)(2)).

In the context of a derivative action, courts evaluate fairness, reasonableness, and adequacy

5

by considering a range of factors, such as "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; . . . the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; [and] the experience and views of counsel . . . . " *Id.* (internal citation and quotations omitted).  Courts also consider "the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest." *In re Pinterest Derivative Litig.*, No. C 20-08331-WHA, 2022 WL 484961, *3 (N.D. Cal. Feb. 16, 2022) (internal citation and quotations omitted).  And courts ensure that the proposed settlement is not "the product of fraud or overreaching by, or collusion between, the negotiating parties," *In re Hewlett-Packard*, 2015 WL 1153864, at *3 (internal citation and quotation omitted).  *See also Lloyd v. Gupta*, No. 15-CV-04183-MEJ, 2016 WL 3951652, at *4 (N.D. Cal. July 22, 2016) (internal citation and quotations omitted) (noting that courts consider whether "the settlement is the result of arm's-length negotiations in which plaintiffs' counsel has effectively represented the interest of the shareholder class, and whether the substantive terms of the settlement are in the interests of [the company] and its shareholders relative to the likely rewards of litigation.").

At the preliminary approval stage, the Court need not definitively decide whether the proposed settlement survives scrutiny under these standards: instead, it need only determine whether the settlement falls "within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (internal citation and quotations omitted*); see In re Wells Fargo & Co. Sharehold Derivative Litig.*, 2019 WL 13020734, at *4.

**B.  Analysis**

   **i.   Benefits to the Corporation**

"The principal factor to be considered in determining the fairness of a settlement concluding a shareholders' derivative action is the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest." *In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 WL 4820784, at *2 (N.D. Cal. Nov. 5, 2008) (internal citation and quotation omitted).  This is a non-monetary settlement that requires Lyft to adopt several corporate governance reforms and keep them in place for a three-year period.  *See*

6

Dkt. No. 60-2, Ex. A. While "[c]ourts have recognized that corporate governance reforms . . . provide valuable benefits to public companies," the Court is skeptical that the reforms presented here are a benefit *of the settlement* rather than Lyft's own independent actions. *In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA-(JCS), 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008) (internal citation and quotations omitted). *See In re Pinterest Derivative Litig.*, No. C 20-08331-WHA, 2022 WL 2079712, at *3 (N.D. Cal. June 9, 2022) (expressing concern regarding the value of corporate reforms when a "fair number of the reforms were already in place as a result of the corporation's own actions addressing the problem"). Lyft has already implemented most of the specified reforms such that they are not "benefit[s] . . . derived from the proposed settlement." *In re Apple Computer, Inc. Derivative Litig.*, 2008 WL 4820784, at *2.

The settlement does, however, fix these reforms in place for a three-year period, assuring Lyft drivers, riders, and shareholders that these reforms are not immediately revocable. Presumably, this three-year commitment should enhance consumer, investor, and employee trust in Lyft's safety and corporate governance. And because "potential buyers of [Lyft] stock likely will view [the] reforms as an additional reason to purchase the stock," this three-year period should confer financial benefits to Lyft. *Id.*; *see In re Pinterest Derivative Litig.*, No. C 20-08331-WHA, 2022 WL 2079712, at *1 (N.D. Cal. June 9, 2022) ("The reaction of shareholders also factors into assessing the fairness of a settlement.").

Moreover, "without a settlement, Plaintiffs face[] the prospect of additional or collateral litigation . . . further prolonging any resolution beneficial to [Lyft]." *In re Wells Fargo & Co. Sharehold Derivative Litig.*, 2019 WL 13020734, at *6. *See In re Apple Computer, Inc*, 2008 WL 4820784, at *3 (internal citation and quotations omitted) ("[T]he risk, expense, complexity, and likely duration of further litigation are additional factors that should be considered in determining the fairness of a proposed settlement."). The parties acknowledge that Plaintiffs' claims would likely face substantial obstacles at the pleading and summary judgment stages, *see* Mot. at 21–22, and courts have generally "recognized that it is often difficult for plaintiffs to prevail in derivative actions." *In re Wells Fargo & Co. Sharehold Derivative Litig.*, 2019 WL 13020734, at *6. The Settlement Agreement bypasses the expenses and likely duration of further litigation, provides a

7

1    resolution beneficial to Lyft, and ensures that Plaintiffs do not end up with zero benefit.  The

2    amount of time this case has been pending—the operative complaint was filed almost four years

3    ago—heightens these considerations.

4          Accordingly, at the preliminary approval stage, the Court is persuaded that the benefits of

5    the Settlement Agreement—principally the three-year commitment period—weigh in favor of

6    granting preliminary approval.

        **ii.**    **Evidence of Conflicts and Signs of Collusion**

8          To determine whether the settlement is "within the range of possible approval," the Court

9    must "ensure that the agreement is not the product of fraud or overreaching by, or collusion

10   between, the negotiating parties." *In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544, at *2

11   (internal citation and quotations omitted).  *See In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378

12   (9th Cir. 1995).  The Ninth Circuit has directed district courts to look for "subtle signs of

13   collusion," including whether the parties negotiated a "'clear sailing' arrangement (*i.e.*, an

14   arrangement where defendant will not object to a certain fee request by class counsel)." *Roes, 1-2

15   v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019).  "Although clear sailing provisions

16   are not prohibited, they by [their] nature deprive[] the court of the advantages of the adversary

17   process in resolving fee determinations and are therefore disfavored." *Id.* at 1050.

18         Although the Settlement Agreement does not contain an express clear sailing provision, the

19   parties propose an "agreed-to" $700,000 award for attorneys' fees and expenses.  SA § 4.1.  In

20   light of this ambiguous phrasing, the Court errs on the side of treating this provision as a version

21   of a clear sailing agreement.  *See Erguera v. CMG CIT Acquisition, LLC*, No. 1:20-CV-1744 JLT

22   CDB, 2023 WL 4108071, at *11 (E.D. Cal. June 21, 2023).  The Court "has a heightened duty to

23   peer into the [clear sailing] provision and scrutinize closely the relationship between attorneys'

24   fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply

25   because they are uncontested." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 948 (9th

26   Cir. 2011).  The Court has some skepticism that a $700,000 award is appropriate here and is

27   cognizant of its obligation to review fee awards with particular rigor.  *See Roes*, 944 F.3d at 1051

28   ("[T]he district court [must] closely . . . examine the claimed value of the non-cash portions of the

1  settlement that were used to justify the requested attorneys' fees."). At the final approval stage,
2  the Court will carefully scrutinize the circumstances and determine what attorneys' fee award is
3  appropriate in this case. *See id.* at 1056.
4        At this preliminary stage, the Settlement Agreement's clear sailing provision does not
5  create an inference of collusion or conflict that warrants invalidating the settlement as a whole.
6  The Settlement Agreement does not contain a reversionary "kicker" arrangement, and any
7  approved service awards are drawn from the awarded attorneys' fees. SA § 4. *See In re Bluetooth*
8  *Headset Prod. Liab. Litig.*, 654 F.3d at 949 ("[A] kicker arrangement reverting unpaid attorneys'
9  fees to the defendant rather than to the class amplifies the danger of collusion already suggested by
10  a clear sailing provision."); *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions*
11  *Act (FACTA) Litig.*, 295 F.R.D. 438, 458 (C.D. Cal. 2014) ("As the Ninth Circuit has noted . . . the
12  inference of collusion drawn from a clear sailing provision is reduced when the agreement lacks a
13  reversionary or 'kicker provision.'"). Moreover, the parties assert that the Settlement Agreement
14  is "the product of arm's length negotiations" and "significant give and take" between "zealous and
15  able counsel with extensive experience in complex derivative litigation." Mot. at 19–20. The
16  Settlement Agreement also describes Plaintiffs' counsel's "extensive investigation and analysis"
17  of the alleged misconduct. SA § II. The involvement of counsel with significant experience in
18  derivative litigation, who appear "on behalf of all parties," weighs in favor of a non-collusive
19  settlement. *In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544, at *3; *see Lloyd*, 2016 WL
20  3951652, at *5; *In re Pinterest Derivative Litig.*, No. C 20-08331-WHA, 2022 WL 484961, at *7
21  (N.D. Cal. Feb. 16, 2022) (finding that representation by "various experienced counsel" may
22  support a settlement).
23        At this stage, the Court does not find any procedural inadequacies in the negotiating
24  process or substantive inadequacies in the Settlement Agreement's provisions that bar preliminary
25  approval.

      **iii.    Scope of Release**

"The scope of releases factor[s] into the fairness of a settlement." *In re Pinterest Derivative Litig.*, No. C 20-08331-WHA, 2022 WL 484961, at *3 (N.D. Cal. Feb. 16, 2022).

9

1  Under the Settlement Agreement, the "Released Claims" must "concern, arise out of, or relate to"
2  this derivate shareholder action. SA § 1.21. As such, the Released Claims "are limited to those
3  based upon the core of this litigation." *In re Hewlett-Packard*, 2015 WL 1153864, at *5.
4  Accordingly, the "scope of release is sufficiently narrow." *In re LDK Solar Sec. Litig.*, No. C 07-
5  05182 WHA, 2010 WL 598361, at *2 (N.D. Cal. Feb. 17, 2010). *See In re Zoran Corp.
6  Derivative Litig.*, No. C 06-05503 WHA, 2008 WL 941897, at *9 (N.D. Cal. Apr. 7, 2008) ("The
7  released claims should only be those made in the consolidated complaint and those closely related
8  thereto."); *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1334 (N.D. Cal. 2014) ("[T]he scope of
9  the release in the proposed settlement . . . is acceptable because the claims released are limited to
10 those based upon the facts set forth in the . . . Complaint."). Moreover, claims alleged in the
11 Federal Securities Action and related state actions are specifically carved out of the Settlement
12 Agreement, bolstering the release provisions' fairness. *See* SA § 1.21. Since the language of the
13 Settlement Agreement's release is appropriately tied to the claims raised in the operative
14 complaint, the scope of release weighs in favor of granting preliminary approval.

### iv.   Preferential Treatment

16 Finally, the Court considers whether the Settlement Agreement provides preferential
17 treatment. The Settlement Agreement authorizes Plaintiffs' counsel to "apply to the Court for a
18 service award of up to $1,500 for each of the Plaintiffs, only to be paid upon Court approval." SA
19 § 4.2. "Derivative plaintiffs may . . . merit compensation for work done on behalf of the
20 [shareholders]." *In re Wells Fargo & Co. Sharehold Derivative Litig.*, 2019 WL 13020734, at *8
21 (internal citation and quotations omitted). $1,500 is below what some courts have considered "the
22 presumptively reasonable amount of $5,000 for such awards." *Id.* Again, the Court will decide at
23 the final approval stage whether the requested awards are warranted. But the Court finds that this
24 factor does not weigh against preliminary approval.

25                                       *     *     *

26 Having weighed the relevant factors, the Court preliminarily finds that the Settlement
27 Agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval. The Court
28 **DIRECTS** the parties to include both a joint proposed order and a joint proposed judgment when

10

1  submitting their motion for final approval.

## III. PROPOSED NOTICE PLAN

If the Court preliminarily approves a derivative action settlement, notice "must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c). The Court separately evaluates the proposed notice procedure. *See In re Wells Fargo & Co. Sharehold Derivative Litig.*, 2019 WL 13020734, at *8. In determining the appropriate notice method, "the Court considers whether such notice would be sufficient to reach the majority of interested stockholders." *Bushansky v. Armacost*, No. 12-CV-01597-JST, 2014 WL 2905143, at *6 (N.D. Cal. June 25, 2014) (citing Wright & Miller, Federal Practice & Procedure § 1839).

The parties propose to provide notice by (1) Lyft publishing the Summary Notice one time in the national edition of *Investor's Business Daily*; (2) Plaintiffs' Counsel publishing the Summary Notice one time over *PR Newswire*; and (3) Lyft posting the Settlement Agreement (and exhibits thereto) and the Notice on an Internet page that Lyft creates which is accessible via the "Investors" page of Lyft's website. *See* Mot. at 23; SA § 3. Courts have found that similar procedures satisfy Rule 23.1 and due process. *See In re Hewlett-Packard Co. S'holder Derivative Litig.*, 716 F. App'x 603, 608 (9th Cir. 2017) (affirming the district court's decision to approve notice procedures where the parties placed notice in prominent publications and posted the notice on the company's website); *Bushansky*, 2014 WL 2905143, at *6 (collecting cases). The Court comes to the same conclusion here.

Similarly, the Court finds that the content of the proposed Notice "describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *In re Hewlett-Packard*, 716 F. App'x at 609 (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). The Notice summarizes: the litigation to date, the proposed corporate governance reforms, the release provisions, the proposed attorneys' fee award, and relevant information about the hearing, including the deadline to file an objection. *See* Dkt. No 60-2, Ex. C. The Summary Notice is similarly sufficient to alert and inform interested parties about the proposed Settlement Agreement and its accompanying hearing. *See* Dkt. No 60-2, Ex. D (directing readers to the full-length Notice and providing information about

the reforms, hearing, and objection period). Accordingly, the Court finds that the proposed notice process is "reasonably calculated, under all the circumstances, to apprise all [shareholders] of the proposed settlement." *See Roes*, 944 F.3d at 1045 (internal citation and quotations omitted).

## IV.  ATTORNEYS' FEES

"[B]ecause of the danger that parties will overestimate the value of injunctive relief in order to inflate fees, courts must be particularly careful when ascribing value to injunctive relief for purposes of determining attorneys' fees, and avoid doing so altogether if the value of the injunctive relief is not easily measurable." *Id.* at 1055. Under the terms of the proposed Settlement Agreement, the Individual Defendants agreed to pay Plaintiffs' counsel $700,000. However, the Court need not—and does not—decide the issue of attorneys' fees now. Preliminary approval of the settlement is not an endorsement or pre-approval of any future fee request, which will be considered at the final fairness hearing.

## V.  CONCLUSION

The Court **GRANTS** Plaintiffs' motion for preliminary approval, Dkt. No. 60. All proceedings and deadlines save those involving settlement are **STAYED**. The form of notice is hereby **APPROVED**. The parties are **DIRECTED** to implement the proposed notice plan. The parties are further **DIRECTED** to meet and confer and stipulate to a schedule of dates for each event listed below, which shall be submitted to the Court within seven days of the date of this Order. Shareholders shall be given at least six weeks from the publication of notice to file an objection to the Settlement Agreement. Shareholders shall be given at least two weeks from the deadline for the parties' reply briefs regarding motions for attorneys' fees and expenses to file objections to any motions for attorneys' fees and expenses.

| Event | Date |
|---|---|
| Deadline for notice of the settlement to be published and posted consistent with the proposed notice plan | |
| Filing deadline for motions for attorneys' fees and expenses | |
| Filing deadline for shareholders' objections to the settlement | |

| | |
|---|---|
| Filing deadline for the parties' replies to shareholder settlement objections | |
| Filing deadline for responses to motions for attorneys' fees and expenses | |
| Filing deadline for replies to motions for attorneys' fees and expenses | |
| Filing deadline for shareholders' objections to motions for attorneys' fees and expenses | |
| Filing deadline for the final approval motion | |
| Final approval settlement hearing | |

**IT IS SO ORDERED.**

Dated:   10/16/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge